# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE G. ALBERTSON,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>ROBERT WITHROW, M.D.,<br>Executive Director,<br><br>　　　　Respondent. | Case No. CV 15-5989-MWF (KES)<br><br>REPORT AND RECOMMENDATION OF<br>UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Michael W. Fitzgerald, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.
## BACKGROUND

Petitioner Clarence G. Albertson ("Petitioner") is a civil detainee at Coalinga State Hospital pursuant to California Welfare and Institutions Code section 6600 et seq. (the Sexually Violent Predator Act, or "SVPA"). On July

22, 2015, Petitioner constructively filed[1] a Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to 28 U.S.C. § 2254. (Dkt. 1.) The Court dismissed the Petition with leave to amend because none of its three grounds were framed as federal questions. (Dkt. 3.) Petitioner filed his First Amended Petition ("FAP") on September 24, 2015, asserting two grounds for relief. (Dkt. 5.)

On January 6, 2016, Respondent moved to dismiss the FAP as untimely and for failing to raise federal claims. (Dkt. 16.) Petitioner filed on opposition and requested oral argument, arguing that Respondent misunderstood the nature of his claims and thus started the statute of limitations "clock" at the wrong time. (Dkt. 18, 22.) Respondent filed a reply, arguing that if Petitioner's claims arise from an alleged change in his diagnosis on February 12, 2015, then his claims are unexhausted. (Dkt. 20.)

For the reasons stated below, the Court finds that the FAP's first claim challenges the Ventura County Superior Court's order of indeterminate commitment dated May 18, 2010 (the "2010 Commitment Order") and is therefore time-barred. The FAP's second claim challenges an alleged change to Petitioner's diagnosis made on February 12, 2015, and is therefore unexhausted. This mixed Petition should be dismissed without prejudice so that Petitioner can exhaust his second claim in the state courts.

---

[1] Petitioner signed his original federal Petition on July 22, 2015. (Dkt. 1 at 14.) "Under the mailbox rule, a prisoner's pro se habeas petition is 'deemed filed when he hands it over to prison authorities for mailing to the relevant court.'" Campbell v. Henry, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (citations omitted). A court generally deems a habeas petition filed on the day it is signed, because it assumes the petitioner turned the petition over to prison authorities for mailing that day. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); Butler v. Long, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014) (per curiam) (as amended).

## II.

## PROCEDURAL HISTORY

### A. Commitment Proceedings and Direct Appeal.

Petitioner was convicted of rape in 1977, assault with intent to commit rape with a weapon in 1979, and rape in 1986. (Dkt 17, Respondent's Notice of Lodging, Lodged Document ["LD"] 1 at 2.) As a result of the 1986 conviction, he served eleven years in state prison and was scheduled for release on parole in September of 1998. (Id.) The California Department of Mental Health evaluated Petitioner and determined that he met the criteria for civil commitment and treatment pursuant to the SVPA. (Id.)

On August 24, 1998, the District Attorney of Ventura County filed a petition pursuant to the SVPA, alleging that Petitioner was likely to engage in sexually violent predatory behavior and should be committed. (Id.; LD 2 at 1-5.) On November 18, 1998, a probable cause hearing was held; the state superior court found that probable cause existed to sustain the petition and set the matter for a jury trial. (LD 2 at 52-53.)

Trial commenced on May 2, 2003.[2] (LD 2 at 189.) Dr. Douglas Korpi and Dr. John Hupka testified for the State. (Id. at 206, 211.) Dr. John Watts Podboy testified for the defense. (Id. at 214.) A report authored by Dr. Hupka

---

[2] The Court does not recount herein the proceedings that occurred after the probable cause hearing and before Petitioner's trial, which culminated in the California Supreme Court's opinion in Albertson v. Superior Court, 25 Cal. 4th 796, 23 P.3d 611 (2001), holding that the prosecution was entitled to updated interview and mental examinations of Petitioner, as well as access to treatment information. On remand, the California Court of Appeal issued a peremptory writ of mandate vacating the trial court's order allowing direct access to Petitioner's "raw medical and psychological records," but allowing access to otherwise confidential treatment information, consistent with the California Supreme Court's opinion. (LD 2 at 102-03.)

dated July 5, 2002, shows that Petitioner's diagnosis is "Paraphilia NOS [i.e., not otherwise specified] – sex with non-consenting persons" identified in the fourth edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") published by the American Psychiatric Association ("APA") using code no. 302.9. (Id. at 164.)

Prior to deliberations, the jury was instructed generally concerning the requirements of the SVPA. (Id. at 239.) The jury was specifically instructed, "you may not find [Petitioner] to be a sexually violated predator based on prior offenses without relevant evidence of a currently diagnosed mental disorder that makes him a danger …." (Id. at 241.)

The jury began deliberating on May 8, 2003. (Id. at 216.) The jury focused on the expert testimony concerning Petitioner's diagnoses, asking several questions about that topic. For example, the jury asked, "What are the mental disorder(s) diagnosed by all 3 doctors?" (Id. at 262.) The jury also asked, "Can we consider anti-social personality behavior as a diagnosed mental disorder ….? (Id. at 266.) The trial court responded to this second question by instructing the jury that they could only find Petitioner a sexually violent predator upon finding that he suffers from paraphilia NOS, as follows:

> In this case, based on the evidence presented, you may not find the [Petitioner] to be a sexually violent predator based solely on a diagnosis of anti-social personality disorder. The [State's] theory in this case was that [Petitioner] suffers from paraphilia, not otherwise specified, for non-consenting persons. This was the qualifying mental disorder testified to by [the State's] witnesses, and upon which you must decide if he has a diagnosed mental disorder ….

(Id. at 267.)

On May 9, 2003, a jury found that Petitioner was a sexually violent

predator within the meaning of the SVPA. (LD 2 at 269-72.) Petitioner was ordered to be committed for two years to the custody of the California Department of Mental Health for appropriate treatment and confinement. (Id. at 276.)

On August 18, 2004, the California Court of Appeal affirmed the judgment on direct appeal. (LD 1.) On October 27, 2004, the California Supreme Court denied review. People v. Albertson, 2004 Cal. LEXIS 10362 (Cal. Oct. 27, 2004).

Following several two-year recommitments, on May 18, 2010, Petitioner was recommitted for an indeterminate period under the SVPA, as amended.[3] (LD 3 [the 2010 Commitment Order].) This was done via a bench trial, because Petitioner waived his right to a jury trial. (LD 3 at 2.) The trial court found that Petitioner "does have a diagnosed mental disorder," but the court records submitted do not state the particular diagnosis. (LD 3.) Petitioner did not file a direct appeal. (Dkt. 5, First Am. Pet. at 2.)

## B.     State Court Collateral Challenges.

On February 2, 2015,[4] almost five years later, Petitioner filed a petition for writ of habeas corpus in the Ventura County Superior Court challenging the 2010 Commitment Order. (LD 4 at 2.) Petitioner alleged the following three grounds for relief:

---

[3] As originally enacted, the SVPA required that sexually violent predators be committed to a mental health facility for renewable two-year terms after their sentences were completed. Cal. Welf. & Inst. Code § 6604.1(a). In 2006, Proposition 83, more commonly known as Jessica's Law, increased restrictions on releasing sex offenders by lengthening the SVPA's civil commitment term from two years to an indeterminate period. Cal. Proposition 83 § 27 (2006) (amending Cal. Welf. & Inst. Code § 6604).

[4] Petitioner alleges he mailed the petition on January 28, 2015, his signature date. (Dkt. 5, First Am. Pet. at 3.)

5

Ground One: "For an individual to be committed … under the SVPA, a person must suffer from a true diagnosed mental disorder." (LD 4 at 3.) When asked to provide supporting facts by the form petition, Petitioner explained, "The Trial Court civilly committed Petitioner under the SVPA to an indeterminate term based upon a mental disorder, Paraphilia Not Otherwise Specified (Paraphilia NOS) and Petitioner is still being held under a diagnosis of Paraphilia NOS even though it no longer exists." (Id.) Petitioner asserted that Paraphilia NOS "no longer exists," or is no longer a "true" mental disorder, because when the APA published the fifth edition of the DSM in 2013, it no longer listed Paraphilia NOS as a disorder.[5]

Ground Two: "Where the facts underlying the experts opinion is proven to be false, the experts entire testimony is rendered false." (LD 4 at 4.) Based on Petitioner's supporting facts, the gravamen of this claim was that any judicial findings based on expert testimony that Petitioner suffered from Paraphilia NOS were invalid, because the APA removed Paraphilia NOS as a disorder from the DSM-5. (Id.)

Ground Three: "[T]he trial court having committed Petitioner using Paraphilia NOS as the instrument of Petitioner's dangerousness, now that Paraphilia NOS is no longer a valid diagnosis, the law precludes anyone from continuing to incarcerate Petitioner under the SVPA using Paraphilia NOS or assigning Petitioner a 'new' mental disorder and claiming that now after 17 years a 'new" mental disorder causes Petitioner to be dangerous." (LD 4 at 6.)

---

[5] Apparently, this change in the DSM-5 was known before its publication date, because Petitioner cites articles published in 2011 commending the APA for making this change. (LD 4 at 5.) According to the APA's website, the text of the DSM-5 was drafted between March 2011 and November 2012, and the first release of the published work occurred at the APA's annual meeting in May 2013. See, http://www.dsm5.org/about/Pages/Timeline.aspx.

In the supporting facts, Petitioner does not allege that anyone has actually assigned him a "new" mental disorder, but instead again references the fact that Paraphilia NOS was omitted from the DSM-5.

When asked why the issues in his February 2, 2015 petition were not raised on direct appeal, Petitioner asserted, "The proof was not available until recently" because the APA "only recently" removed the mental disorder Paraphilia NOS from the DSM-5. (LD 4 at 8.)

On February 10, 2015, the superior court denied the petition, ruling in pertinent part that the language of the two articles upon which Petitioner relied, "both dated 2011, do not state that paraphilia NOS is no longer a valid diagnosis; in fact they acknowledge that [the] NOS diagnosis remain[s] included in the DSM for all manner of disorders." The court also observed that Petitioner's argument appeared to be based on the incorrect assumption that, under state law, "a diagnosis must be specifically listed in the DSM to be valid." (Dkt. 5 at 14.)

On March 5, 2015, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal on exactly the same grounds, essentially submitting a photocopy of his superior court petition.[6] (LD 5.) The court summarily denied the petition on March 11, 2015. (Dkt. 5 at 15.)

Finally, on April 13, 2015, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.[7] (LD 6.) Again, Petitioner's three grounds for relief were copied from his earlier petitions. The court summarily denied the petition on June 24, 2015. (Dkt. 5 at 16.)

---

[6] Petitioner alleges he mailed the petition on February 26, 2015, his signature date. (Dkt. 5 at 4.)

[7] Petitioner alleges he mailed the petition on April 10, 2015, his signature date. (Dkt. 5 at 4.)

7

## C. Original Federal Petition and FAP.

In his original federal petition, Petitioner says that he is challenging the 2010 Commitment Order. (Dkt. 1 at 2.) Petitioner worded his three grounds for relief slightly differently from his state court petitions, as follows:

<u>Ground One</u>: "Petitioner must suffer from a current diagnosed mental disorder, with a judicial finding that the current mental disorder causes petitioner to be currently dangerous, for petitioner to be committed under the SVPA. … [I]t was determined by the court that Paraphilia NOS, non-consenting adults cause Petitioner to be dangerous …. Now that Paraphilia NOS is no longer a valid mental disorder … Petitioner should be released or at the very least petitioner should be granted a new trial to determine his current dangerousness." (Dkt. 1 at 3.) As a supporting fact, Petitioner cites to the APA's removal of Paraphilia NOS from the DSM-5. (<u>Id.</u>)

<u>Ground Two</u>: "Where the facts underlying the experts opinion is proven to be false, the experts entire testimony is rendered false. … The fact that Paraphilia NOS has been removed from the DSM-5 … proves that the state's evaluators' opinion testimony was false …. Petitioner's commitment under the SVPA should be voided and petitioner should be released, or at the very least petitioner should be granted a new trial." (Dkt. 1 at 6.)

<u>Ground Three</u>: "The SVPA being a judicial commitment and the trial court having committed petitioner using Paraphilia NOS non consenting adults … now that Paraphilia NOS is no longer a valid diagnosis, the law precludes anyone from assigning petitioner a 'new' mental disorder … without a judicial finding that the 'new' mental disorder causes petitioner to be dangerous." (Dkt. 1 at 9.) As a supporting fact, Petitioner alleges for the first time that "the Department of State Hospitals apparently believes that it is no longer a valid diagnosis due to the fact that they have changed Petitioner's diagnosis (petitioner's most recent diagnosis as of 02/12/2015, is: 302.89

Other specified paraphilic disorder (non-consent with force) …. To continue to incarcerate petitioner, a determination in civil commitment proceedings of current mental illness and current dangerousness is required, not the arbitrary issuance of a new diagnosis." (Id.) Petitioner requested a "new trial to determine whether or not petitioner actually has this new mental disorder …." (Id. at 10.)

When asked why these claims were not brought on direct appeal, Petitioner again referred to the "recent" publication of the DSM-5, but he also said, "the California Auditor's report was not published until March 12, 2015." (Dkt. 1 at 12.)

Respondent lodged a copy of the Department of State Hospitals' March 3, 2015 annual report which includes as an attachment an annual evaluation of Petitioner dated February 12, 2015. (Dkt. 21, Respondent's Supplemental Notice of Lodging, Supplemental Lodged Document ["S-LD"] 1.) According to that annual evaluation, Petitioner's "current" diagnoses do not include Paraphilia NOS. Rather, the three diagnoses listed with DSM-5 codes are as follows:

> 302.89 Other Specified Paraphilic Disorder (Non-Consent with Force)
> 303.90 Alcohol Use Disorder, in a Controlled Setting
> 301.7 Antisocial Personality Disorder

(S-LD 1, Dkt. 21-1 at 16.)

In the FAP, Petitioner again alleges that he is challenging the 2010 Commitment Order. (Dkt. 5 at 2.) Petitioner dropped his expert witness-related claim and asserted the following two claims corresponding with the previous federal Grounds One and Three:

Ground One: Petitioner has been denied liberty interests guaranteed by the Constitution and laws of the United States because he has "been civilly

incarcerated for over 17 years under the SVPA" and the diagnosis on which the judicial finding that he was dangerous was based, i.e., Paraphilia NOS has been removed from DSM-5. (Dkt. 5 at 5.) "Without a judicial finding of a current mental disorder that causes petitioner to be dangerous, petitioner … can no longer be incarcerated under the SVPA." (Id.)

Ground Two: Petitioner has been denied "liberty without due process" because Coalinga State Hospital has issued Petitioner "a new mental disorder without a judicial determination that the new mental disorder causes petitioner to be dangerous," which is a requirement for commitment under the SVPA. (Dkt. 5 at 5-6.) Again as support, Petitioner contends that his diagnosis was changed on February 12, 2015, to DSM-5 code 302.89. (Id. at 13.)

**D. Respondent's Motion to Dismiss.**

Respondent moved to dismiss the FAP, arguing that (1) it is barred by the statute of limitations; and (2) the claims alleged are not cognizable because they present no federal question.

With regard to the time-bar, Respondent views the 2003 jury verdict finding Petitioner a sexually violent predator as the "conviction" that Petitioner is currently challenging. According to Respondent, that judgment became final ninety days after the conclusion of petitioner's direct appeal on January 25, 2005, triggering the one-year statute of limitation under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") at 28 U.S.C. § 2244(d). (Dkt. 16 at 5.) Respondent argues that Petitioner's state petitions were filed too late to create any statutory tolling and that Petitioner has not presented any arguments for sufficient equitable tolling.

**E. Petitioner's Opposition.**

Petitioner opposes Respondent's statute of limitations arguments by arguing that the FAP is not, in fact, challenging the 2010 Commitment Order, but rather the "injustice" of his continued incarceration "absent a judicial

finding that the current diagnosis [i.e., the new February 2015 diagnosis] … causes him to be dangerous." (Dkt. 18 at 4.)

**F.  Respondent's Reply.**

In response, Respondent raises both legal and factual arguments. Legally, Respondent points out that none of Petitioner's state petitions mention the February 2015 diagnosis. As a result, if that is the state action challenged in the FAP, Petitioner's claims are unexhausted. (Dkt. 20 at 4.) Factually, Petitioner disputes that the February 12, 2015 diagnosis constitutes a "new" diagnosis. (Id.)

## III.
## DISCUSSION

**A.  Ground One is Time-Barred.**

Ground One of the FAP, corresponding with the first ground in each of Petitioner's three state petitions, argues that Petitioner can no longer be committed under the SVPA based on a diagnosis of Paraphilia NOS because the APA removed that disorder from the DSM-5. (Cf., Dkt. 5 at 9 and LD 4 at 3.)

In this claim, Petitioner is challenging the 2010 Commitment Order. The Court arrives at this conclusion because (1) Petitioner's current confinement is the result of the 2010 Commitment Order (LD 3), and (2) the FAP says that it is challenging the 2010 Commitment Order. (Dkt. 5 at 2.)

The 2010 Commitment Order became final upon expiration of Petitioner's deadline to seek direct review. 28 USC § 2244(d)(1)(A). The 2010 Commitment Order was entered on May 18, 2010, and Petitioner had notice of its entry that day because he was in court. (LD 3.) The lodged documents, however, do not reflect whether Petitioner or his attorney ever received written notice of entry. To be conservative, the Court will assume that the 2010 Commitment Order became final 180 days after its entry, which was

November 15, 2010. Cal. Rule of Court 8.104(a)(1)(C).

Absent tolling, Petitioner's federal limitations period expired one year later on November 15, 2011. Petitioner's first federal filing did not occur until July 22, 2015. (Dkt. 1.) Thus, Petitioner would need almost four years of tolling to render his FAP timely as to Ground One.

Although the limitations period is statutorily tolled while a "properly filed" application for state post-conviction relief is pending, 28 U.S.C. § 2244(d)(2), none of Petitioner's requests for such relief result in any statutory tolling, because they were all filed long after the federal limitations period expired. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000) (state habeas petition filed after limitations period had already run results in no tolling). Here, Petitioner did not file his first state petition challenging the 2010 Commitment Order until January 28, 2015. (LD 4.)

The Court would be willing to award Petitioner equitable tolling until March 2013 or a few months thereafter, because Petitioner's claim is based on the DSM-5 which was published as of that date. But even applying equitable tolling until mid or late 2013, Petitioner's state court petitions were filed too late to create any statutory tolling, and Petitioner has failed to present evidence or arguments in support of any other basis for equitable tolling. As a result, Petitioner's first claim is time-barred.

Having determined that Petitioner's first claim is time-barred, the Court declines to address whether the FAP's Ground One states a claim cognizable on federal habeas review.

**B.** **Ground Two is Unexhausted.**

The United States Supreme Court follows a rule of "total exhaustion," requiring that all claims in a habeas petition be exhausted before a federal court

may grant the petition. Rose v. Lundy, 455 U.S. 509, 522 (1982). Exhaustion requires that petitioner's claims be fairly presented to the highest court in a state system even if that court's review is discretionary. O'Sullivan v. Boerckel, 526 U.S. 838, 845–47 (1999); James v. Giles, 221 F.3d 1074, 1077 n. 3 (9th Cir. 2000). To satisfy the exhaustion requirement, a habeas petitioner must fairly present his or her federal claims in the state courts in order to give the State the opportunity to pass upon and correct alleged violations of the prisoner's federal rights. Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (holding due process claim not exhausted where state petition asserted only erroneous evidentiary ruling). A federal claim "is fairly presented if the petitioner has described the operative facts and legal theory upon which his claim is based." Tamapua v. Shimoda, 796 F.2d 261, 262 (9th Cir. 1986).

Ground Two of the FAP has not been presented to the California courts. The key factual allegation – that Petitioner's diagnosis was changed on February 12, 2015 – appears nowhere in the state petitions.[8] Indeed, Petitioner's first state petition was signed in January 2015 *before* the alleged change of diagnosis. (LD 4.) Petitioner's subsequent state petitions copy the same language as the first, so they cannot have been intended to challenge the February 12, 2015 evaluation. Each state petition identifies the challenged state action as the 2010 Commitment Order. (LD 4 at 2; LD 5 at 2; LD 6 at 2.)

Because Plaintiff did not tell the state courts about the alleged change in his diagnosis that occurred February 12, 2015, the state court opinions do not

---

[8] The state petitions do say that "the law precludes anyone from continuing to incarcerate petitioner under the SVPA using paraphilia NOS or assigning petitioner a 'new' mental disorder and claiming that now after 17 years a 'new' mental disorder causes petitioner to be dangerous." (LD 4 at 6; LD 5 at 6; LD 6 at 6.) This, however, is not an assertion that anyone has actually assigned Petitioner a new mental disorder.

address it. No state court has yet considered whether the February 12, 2015 evaluation truly changed Petitioner's diagnosis, and if so, whether it did so in a manner that complies with state law requirements under the SVPA and federal due process requirements.

Having determined that Petitioner's second claim is unexhausted, the Court declines to address whether the FAP's Ground Two states a claim cognizable on federal habeas review.

## IV.
## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) accepting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition and dismissing this action without prejudice so that Petitioner can exhaust his second claim in the state courts.

Dated: March 17, 2016



_____
KAREN E. SCOTT
United States Magistrate Judge

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report. This Report and any Objections will be reviewed by the District Judge whose initials appear in the case docket number.